UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT

ERIC ANDREW PEREZ,

$\qquad$ Plaintiff,

**17CV8343**

-against-

Karol V. Mason, Paul Wyatt, Dr. Bryant, Constantinos
Katergaris, Unknown Public Safety Officers,
Joseph Laub, Peter Venice, Unknown emergency Room Supervisor
Mount Sinai Hospital, Alex Cheng, Aaron Savendoff,
Teresa Day, Marie Bhuiyan, Lea Vazquez,
Pedro Echevarria, Makker Tanveer Shahabuddin
Mollah, Christopher Wray, Unknown Assailants,

$\qquad$ Defendants.

JURY TRIAL DEMANDED
Claim No. _____

## *Introduction*

This is a civil criminal case filed under Title VI of the Civil Rights Act of 1964, 4th Amendment, AEDEPA Anti Terrorism Act, denial of adequate medical care, and medical malpractice. The plaintiff alleges that he is suffering from an unwarranted invasion of privacy from within John Jay College. Plaintiff also alleges that he was sprayed with a neurotoxin in the John Jay College Library by an unknown assailant as part of this conspiracy to wound and injure him permanently as part of an ongoing nefarious conspiracy against him. Plaintiff has notified several senior staff members of John Jay College in reference to this conspiracy and no action has been taken. The plaintiff is now suffering from a permanent injury and may develop cancer as a result of the incident. This incident was captured on video.

## Jurisdiction

1. The Court has jurisdiction over the plaintiff's claims of federal constitutional rights under 42 USC §§ 1331(1) and 1343.
2. The Court has supplemental jurisdiction over the plaintiff's state law claims under 28 USC § 1367, 18 USC § 2333.

## *Parties*

3. Plaintiff, Eric Andrew Perez, at all relevant times was a student at John Jay College during the events described in this complaint.
4. Defendant, Karol V. Mason, is the President of John Jay College. She is sued in her individual & official capacities/
5. Defendant, Paul Wyatt, is the Dean of Students at John Jay College. He is sued in his individual & official capacities.
6. Defendant, Dr. Bryant, is the Director of Student Relations at John Jay. He is sued in his individual & official capacities.
7. Defendant, Constantinos Katergaris, is the John Jay Public Safety Sergeant. He is sued in his individual & official capacities.

8.  Defendants, Unknown Public Safety Officers, are Pubic Safety Officers at John Jay. They are being sued in their individual & official capacities.
9.  Defendant, Joseph Laub, is the CIO of John Jay College. He is being sued in his individual & official capacities.
10. Defendant, Peter Venice, is the Commanding Officer of the 18th Pct. NYPD. He is being sued in his individual & official capacities.
11. Defendant, Unknown emergency Room Supervisor, is the supervisor of the Mount Sinai Emergency Room. He or she is being sued in their individual & official capacities.
12. Defendant, Alex Cheng, Physician at Psychiatric Triage Mount Sinai Hospital. He is being sued in his individual & official capacities.
13. Defendant, Aaron Savendoff,is the acting psychiatrist at the Psychiatric Triage Mount Sinai Hospital. He is being sued in his individual & official capacities.
14. Defendant, Teresa Day, is the triage nurse at Mount Sinai Hospital ER.
15. Defendant, Marie Bhuiyan, is the attending nurse at the Psychiatric Triage Mount Sinai Hospital. She is being sued in her individual & official capacities.
16. Defendant, Lea Vazquez, is the attending EMT technician whom was in the back of the ambulance with the plaintiff. She is being sued in her individual & official capacities.
17. Defendant, Pedro Echevarria, is the driver of the Mount Sinai ambulance used to transport the plaintiff to Mount Sinai. He is being sued in his individual & official capacities.
18. Defendant, Makker Tanveer Shahabuddin Mollah, is the attending physician at the New York Presbyterian ER that provided care to the plaintiff. She is being sued in her individual & official capacities.
19. Defendant, Christopher Wray, is the Director of the Federal Bureau of Investigation. He is being sued in his individual & official capacities.
20. Defendants, Unknown Assailants, are being sued for planning and facilitating the attack of 10-17-17. They are being sued in their individual & official capacities based on their possible roles and use at any of the Clandestine Services or groups.

## *Facts*

21. Plaintiff began applying for colleges in May of 2017.
22. Plaintiff filed electronic applications for CUNY and SUNY Colleges.
23. Plaintiff applied for the following CUNY Colleges: John Jay, Queens, Baruch, and Hunter.
24. Plaintiff applied to SUNY Old Westbury.
25. Plaintiff was denied entrance into SUNY Old Westbury by Frank Pizzardo.
26. John Jay College is the only school that the plaintiff heard back from after applying to CUNY.
27. Plaintiff provided the following documentation to CUNY and John Jay: Identity documents, DD214, transcripts,  and immunization history.
28. Plaintiff applied to John Jay to become actively involved in reforming the Justice system.
29. Plaintiff believes that these documents are being illegally used by various persons whom have engineered this conspiracy against the plaintiff and as documents for illegals.
30. John Jay is known as a cop college and over half of the students attending are in cadet programs or pursuing careers in clandestine services.
31. John Jay also has a strong neo liberal, seditious, sanctuary city, and communist center.
32. Plaintiff attended 2 academic advisement sessions and decided to major in law & society.
33. Plaintiff is unable to receive financial aid due to a defaulted loan and predatory lending practices of APEX Technical School.
34. Plaintiff originally registered for four classes.
35. Plaintiff had to drop 2 classes and enroll into a payment plan ($473.24 x 4)

36. Plaintiff has a total of 94 college credits.

37. John Jay has the plaintiff listed as a sophomore

38. On the plaintiff's latest application for a Judicial internship he was only given credit for 60 credits.

39. Prior to enrolling into John Jay the plaintiff was involved with several non profits and groups that stated they were about giving persons with criminal histories a second chance.

40. Several persons that the plaintiff were involved with at theses non profits were working with professors and other groups at John Jay College.

41. Upon several visits to the College the plaintiff noticed that he was being stalked and followed from his apartment to John Jay.

42. Plaintiff also noticed that several students and faculty members were using the first names of his daughters Alexandra and Alyssa in staged conversations.

43. Plaintiff also noticed that there were several production companies operating out of John Jay College at the time.

44. Plaintiff believes that being denied acceptance to SUNY Old Westbury and only hearing back from John Jay College was part of engineering this conspiracy.

## 18 USC § 2511 Interception & disclosure of wire, oral, or electronic communications prohibited, 4th Amendment

45. Plaintiff does not have access to the internet at his residence.

46. After his acceptance into John Jay in June of 2017 he began to notice that his access to his CUNY First and John Jay email accounts were being disrupted.

47. Plaintiff changed his information in CUNY First and it was changed back to original information.

48. Plaintiff also had to reset his CUNY First and email passwords 6 times before his log in issues ceased.

49. Plaintiff logged into his CUNY First account and noticed that his CUNY First account was compromised, see exhibit 1 email 6-20-17 to Dean of Students.

50. Plaintiff reported delay of emails, exhibit 1 9-11-17 Dean of Students.

51. Notification and attempt to set up meeting in reference to censorship, exhibit 1, 9-14-17 Paul Wyatt.

52. Notification of the duplication of his files, exhibit 1, 10-10-17 Paul Wyatt.

Notification to John Jay Help Desk 9-9-17 in reference delays and issues with various systems, exhibit 1.

53. Plaintiff states that his internet, lexis nexis, library database searches, scholarship database file, and the writing of his college papers were being illegally monitored and interfered with while using John Jay computers inside of John Jay College.

54. Plaintiff believes that the conspirators of this conspiracy were directed to allow persons access to his personal information and directed John Jay IT employees to inconvenience the plaintiff.

55. Plaintiff is unable to determine who has access to his information or what the conspirators are using his information for without the logs from John Jay IT Department.

56. Plaintiff has issued subpoenas for the electronic logs.

57. Plaintiff is unable to determine the amount of damage these interceptions have caused him.

## Indifference & Collusion of Senior John Jay Staff

58. The John Jay Senior staff was not only indifferent to the plaintiff's complaints, but have made a game and training technique out of making students report incidents to the Dean of Student Affairs.

59. Upon entering the Dean of Students Rm. L.65.05 the plaintiff observed roughly 20 professionally staged pictures of John Jay staff and Professors faces with their hands up.

60. Their hands had various writings on them.

61. This signifies the various groups of personnel and persons whom have directed and targeted students.

62. John Jay has made it a custom & policy to make a game out of harassing, intimidating, inconveniencing, and even driving its students insane.

63. Plaintiff has several pictures of a few of these portraits.

64. Plaintiff has several active complaints with the US Department of Justice in reference to his deprivation of civil rights and criminal violations being perpetrated against him.

65. Plaintiff attempted to contact President Carol Mason who was a senior member of the US Department of Justice under the Obama Administration.

66. Plaintiff wrote her two separate emails, exhibit 2 (8-16-17 & 8-17-17) notifying her of an ongoing conspiracy against the plaintiff that she could assist with.

67. Plaintiff received no written or oral response from Ms. Mason or any of her representatives. Notification of 9-19-17 & 9-21-17 to the CUNY Chancellor's Office in reference to his issues at John Jay, see exhibit 5.

68. After this notification the plaintiff received responses from the Dean of Students Paul Wyatt. Meeting 9-26-17 @ approximately 11:30 am with Mr. Wyatt and Dr. Bryant the plaintiff described his experiences with the criminal justice system, being hunted as entertainment, his jail & prison experiences, his civil suits, his issues in John Jay, and his experiences in life.

69. Plaintiff was told to gather evidence of his illegal electronic interference & monitoring.

70. Plaintiff was scheduled a counseling session with Dr. Bryant 9-27-17 @ 5pm, exhibit 4.

71. Plaintiff's illegal monitoring, censorship, inconvenience continued even after meeting with Mr. Paul Wyatt and Dr. Bryant.

### Incident John Jay Library 10-10-17
### Conspiracy to kill, kidnap, maim, or injure persons 18 USC § 956,
### Release of Chemical Agent AEDEPA Anti-terrorism 18 USC § 2332c(a)(2)(B)
### NYPL 490.37, 490.47

72. Plaintiff arrived at John Jay College 524 West 59 St New York, NY 10019 around 12 noon.

73. Plaintiff has a midterm on Monday  10/23/17 and a research paper due on Monday 11/30/2017. Plaintiff entered the John Jay College Library second floor and sat at the computer closest to the wall in the computer bank situated between the woman's and men's bathrooms directly across from the librarian desk.

75. There is a security camera located in the middle of the computer bank.

76. The security camera captured the incident in its entirety.

77. Plaintiff was sitting at the computer doing his schoolwork when I noticed several groups of students traveling in groups of threes enter the section where I was at.

78. A short Latino male sat next to me and was doing his schoolwork as well.

79. A group of three unidentified black persons entered the section and one sat directly across from the Latino student and diagonally across from the plaintiff.

80. Plaintiff believes this was around 3:00 pm, but could not be sure as he was consumed by his schoolwork

81. The unidentified black man (description: dark skin, tall, and skinny African or Caribbean) began to spray something into the air.

82. The plaintiff heard a cap being removed from a vile and then three or four spritzes.

83. The substance began to make the Latino student next to him and the plaintiff's eyes water and I began to feel like choking.

84. Plaintiff witnessed this happening in the library two times prior to this and didn't think much of it.

85. Plaintiff continued to do his work.

86. Plaintiff witnessed another group of three students enter the computer bank where he was sitting.
87. This group consisted of two black females and a tall Hispanic male.
88. This group sat on the left side of the computer bank and was followed by a stocky black person whom I seen before and has stated out loud in a telephone conversation that he was a Police Cadet.
89. The two black females sat on the inside chair of the tall Hispanic male and the stocky black male sat directly across from him.
90. A second tall black male entered this computer bank and had a conversation with the tall black male sitting diagonally across from the plaintiff.
91. Plaintiff believe that it was a staged conversation.
92. The second tall black male walked to the back of the library.
93. After this black male walked to the back of the library a brown skin female with curly auburn hair sat next to the tall black male that had originally been spraying something.
94. This female whom I am going to call the assailant was well put together, see exhibit 7 picture of unknown assailant.
95. She was wearing a three quarter light gray peat coat, dress pants, a light gray sweatshirt with the word "LAW" written on it, and carrying a black handbag.
96. The following incident lasted approximately from 3:20 – 3:30 on Oct. 17, 2017.
97. The assailant (exhibit 7) sat down at the computer directly across from the plaintiff.
98. The plaintiff heard an uncapping of a vile or a similar spray bottle device.
99. The plaintiff noticed the assailant move closer to the wall and heard a spritz.
100. Immediately the plaintiff felt a wet mist touch his right hand and his hand started to become numb.
101. Plaintiff's fingers on his right hand began to shake and twitch.
102. Plaintiff lost control of the mouse, and began to notice that he had an elevated heart rate.
103. Plaintiff heard two additional spritzes and felt the same wet mist on his left hand.
104. At the same time the plaintiff heard the AC unit kick on.
105. Plaintiff saw that the tall black man that had been spraying the onion spray that had made his eyes water was crouched all the way back in his seat and looked worried.
106. Plaintiff took a picture of the assailant with his cell phone, see exhibit 7.
107. After taking the picture the assailant got up and left the library.
108. The tall Hispanic man sitting in the computer bank on the opposite side stated, "Nobody's worth going through this for" and left the library.
109. Plaintiff believes that the stocky black cadet was spraying the choke spray on him as well.
110. Plaintiff also witnessed a short stocky black person on his side of the computer bank in the last row (closest to the bookshelves) get up from his seat and walk over to an older black gentleman on the male bathroom side my left, and state what sounded like, "that was the stupidest thing she could have done".
111. After the assailant left the library and  the plaintiff headed to the Pubic Safety Office located on L2.
112. After arriving at the Public Safety Office I asked for an incident report, and filled it out, see exhibit 6.
113. While the plaintiff was standing at the Public Safety desk a short white female cadet
Plaintiff witnessed two Public Safety Officers entering the back door laughing and joking with each other.
114. After filling out the statement I noticed that they were reviewing the camera footage.
115. I handed in my statement and asked to speak with the Public Safety Supervisor.
116. The Public Safety Supervisor Constantinos Katergaris was very rude and even laughed at the plaintiff.
117. He said, "What do you want an ambulance too"?
118. Plaintiff stated , "Yes I need an ambulance."

119. Plaintiff has an hour long recording of the incident from the time that I spoke with Supervisor Katergaris until I was told to shut the recorder off at Mount Sanai Hospital.

120. The EMS technicians arrived at the Public Safety Office about 15 minutes after being called.

121. The Technician asked what had happened and I repeated the story of the incident.

122. Plaintiff explained that an unknown substance was sprayed on him in a few spritzes and that I did not know who the assailants were.

123. I described the symptoms as elevated heart rate, difficulty breathing, tight throat, numbing feeling in my hands shooting down to my feet, spasms in my abdomen, and head throbbing.

124. The EMS technician took my blood pressure.

125. Plaintiff walked with a Public Safety Officer and two EMS technicians from Mount Sinai to the ambulance under his own power.

126. Plaintiff was cool, calm, and collected.

127. The ambulance was followed by a gray vehicle recording the ambulance with a camera phone and several other vehicles.

128. Plaintiff was cooperative and pleasant and as stated before plaintiff has a recording of the incident from the time he spoke with the Public Safety Supervisor until the time I was told to shut the recorder off in Mount Sinai Hospital.

129. Mount Sinai Hospital and John Jay College work together on a regular basis and also share employees.

130. This fact became painfully apparent after my arrival.

## MEDICAL MALPRACTICE COUNT 1, AIDING & ABETTING CONSPIRACY TO KILL MAIM OR INJURE PERSONS WITH CHEMICAL WEAPON

131. Plaintiff arrived at Mount Sinai and was directed by the female EMT technician to enter the emergency room.

132. Plaintiff witnessed two resident doctors in the triage area.

133. Plaintiff believes that within minutes of notification a scene was set up in the Emergency Room (this is how clandestine operatives and law enforcement have been known to train).

134. Plaintiff saw an overweight Puerto Rican female that he had scene at the writing center of John Jay in the back of the Mount Sinai ER.

135. There was a tape of a woman screaming at the top of her lungs playing in a room to the left of where the plaintiff was told to sit.

136. Plaintiff got up to see who was screaming like that and I saw that the room was empty.

137. Plaintiff was told to wait in the seat until the EMT got back.

138. The female EMT came back and the plaintiff was told to sit in the triage area.

139. Plaintiff complied and sat in the triage area where the triage nurse took my pulse and began to ask the standard questions.

140. Plaintiff stated that he had no thoughts of suicide or hurting others.

141. Plaintiff observed that the triage nurse was hesitant to type down anything I stated.

141. Plaintiff's blood pressure was taken again.

142. Plaintiff was cool, calm, and collected as always.

143. Plaintiff believes that the ER was ordered to place the plaintiff in the psychiatric triage part of the ER by someone who was running this operation.

144. Plaintiff was then quickly ushered to the psychiatric part of the ER where I was told that I had to have a psychiatric evaluation.

145. A person whom identified himself as Dr. Aaron Savedoff stated that I had to be psychiatric ally evaluated.

146. The picture on the id card and the face of the person stating he was Dr. Savedoff did not match.

Plaintiff stated, "I wanted out of here and that I was not consenting to any treatment and that I had just been exposed to a chemical agent and needed regular medical care."

147. This infuriated the Doctor and the Doctor stated that I was not leaving there.

148. The EMT, Dr., and psychiatric staff there went into the office of the psychiatric triage center with a sheet of paper the plaintiff believes to be the initial triage paperwork.

149. Plaintiff stated that he wanted to know the justification for keeping him in the psych area and that I did not consent to being held against my will.

150. Plaintiff also stated that he wanted to speak to a supervisor.

151. The plaintiff was told that there was no supervisor available and that I needed to cooperate.

152. Two guards approached the plaintiff and told him to place all of his belongings in the brown bag.

153. One of the guards was Latino and had a big cut cut on the side of his face.

154. This guard was looking at me very angrily and staring at my sneakers for some reason.

155. The two guards insisted that I shut my cell phone off and place my belongings in the brown bag for safe keeping.

156. Plaintiff asked one last time for his triage paperwork and they refused.

157. Plaintiff complied with the guards instructions.

158. Plaintiff placed the contents of his pockets and  book bag in the brown bag as requested.

159. Plaintiff was then instructed to go to the observation room.

160. Plaintiff sat on the bed the whole time and was being asked questions by the doctors.

161. Plaintiff requested to have blood work and swabs of his hands taken on several occasions.

162. The nurse took only three viles of blood, and no swabs of his hands were taken.

163. The whole time that the plaintiff was in the psychiatric triage the man playing Dr. Savedoff and the social worker were having scripted conversations with persons on the telephone and playing like the psychiatric triage area were some sort of head quarters for something.

164. After an hour or so the man playing Aaron Savedoff and a social worker who turned her badge around so that I could not see the picture entered the room and stated that we are going to let you go but that we believe that your accounts of the incident depart from the rest of the people that were there so you are going to be banned from the John Jay campus until you can meet with Dr. Ben Elswick on Friday 10/20/2017, see exhibit 8 discharge paperwork provided by Dr, Savendoff.

165. Plaintiff was also told that his blood work and urinalyses was normal.

166. They also told the plaintiff that he could not leave until they spoke with someone whom knew the plaintiff.

167. Plaintiff provided the Dr. with the phone number of my daughter Alexandra.

168. Plaintiff was not administered any psychiatric evaluation as was stated by Dr. Savendoff at the beginning of his entrapment in the Mount Sinai psychiatric triage.

169. Plaintiff took the discharge paper, exhibit and exited the psychiatric triage area.

170. After being discharged the plaintiff noticed that the ER was empty.

171. Plaintiff attempted to find the nurse to ask her for a copy of my triage paperwork, but could not find the nurse.

172. Plaintiff as the security guard where he could obtain a copy of his triage paperwork, and the guard stated that I had to go to Medical Records for this, see exhibit 8 Mount Sinai Discharge paperwork & Medical records.

173. Plaintiff took the contents of the brown bag and placed them back into his book bag.

## REPORTING INCIDENT TO NYPD 18th PCT & FBI

174. Plaintiff walked to the 18th Police Precinct located at 306 W 54th St New York, NY 10019 to make a follow up report, see exhibit 6 Receipt AIDED report NYPD 18th PCT.

175. Plaintiff believes it was about 8:30 pm on October 17, 2017.

176. Plaintiff made the report with PAA Ortiz.

177. Plaintiff described to PAA Ortiz the incident of the 10/17/17 on the second floor of the John Jay library.

178. The Sgt on duty instructed PAA Ortiz to only take the report as aided report instead of a 61 report.

179. After making the report at the plaintiff took mass transportation home.

180. Plaintiff is still suffering from the same symptoms almost a week later.

181. This is indicative of someone being exposed to neurotoxins.

182. Wednesday 10/18/17 approximately 9:30 am the plaintiff called the FBI at 212-384-1000 to report the incident.

183. Plaintiff recorded the call to the FBI as well.

184. NYPD, John Jay Public Safety engineered the incident of 10-17-17

## JOHN JAY COVER UP AIDING & ABETTING IN CONSPIRACY TO KILL, MAIM , OR INJURE PERSONS

185. On the way to work while in the Staten Island Ferry Terminal the plaintiff called the CUNY Chancellor 's Office to report the incident and request an emergency transfer to another CUNY School. Plaintiff was called into work to walk two dogs on the Upper East side in the vicinity of East 96 and East 93 St.

186. 10/18/17 approximately 12:45pm plaintiff had a conversation with Roberta Nord's assistant Katiana Deference of the Student Advocate's Office CUNY Chancellor in reference to the incident.

187. Plaintiff described the details of the incident and asked for an emergency transfer to another school.

188. Plaintiff finished his Dog Walking Route and then took the train to John Jay as he was scheduled for class on this day.

189. Plaintiff's John Jay ID card was deactivated and he could not enter the building without the security guard allowing him access.

190. Plaintiff was granted access to the building without incident.

191. Plaintiff reported to English 201 Prof Arnoldi.

192. We watched the rest of the movie produced by the George Soros and the plaintiff realized who has been responsible for the conspiracy that he has been suffering from.

193. Plaintiff emailed a picture of the assailant to the John Jay Public Safety Office

194. After class the plaintiff reported to Public Safety to reactivate his John Jay ID card.

195. The Public Safety Officer on duty took the plaintiff's id card and told him to have a seat.

196. Plaintiff's John Jay Id card has been confiscated.

197. Plaintiff is scheduled to attend Political Science 201 with Prof Katsanos at 5:50 pm Wednesdays.

198. Plaintiff was kept from attending his Political Science Class.

199. Plaintiff began recording the events on his cell phone.

200. Plaintiff asked Supervisor Katergaris if John Jay treats all victims of crimes that happen in this school in such a way.

201. Supervisor Katergaris answered of course not.

202. Public Safety Supervisor Katergaris escorted me to the wellness center where I waited for about 30 minutes.

203. Plaintiff was quiet, calm, and patient.

204. Plaintiff witnessed several persons being brought through the emergency exit located by Dr. Bryant's Office.

205. Plaintiff witnessed Dr. Bryant enter his office.

206. Plaintiff believes that all of his classes and movements on John Jay campus have been closely

tracked and scrutinized as part of this conspiracy.

207. Plaintiff believes that Dr. Elswick was ordered to wait to call him into his office.

208. Plaintiff believes that Dr. Elswick and Dr. Bryant were not even in the building until the plaintiff reported to Public Safety.

209. The meeting between Dr. Elswick and the plaintiff was being recorded and listening in on by Dr. Bryant and others.

210. Plaintiff also recorded this meeting.

211. Plaintiff described the events and stated his case and the facts that the incident was on camera.

212. Dr. Elswick works in Mount Sinai as well, and insisted that the plaintiff's sense of reality was different from those around him and stated that if I were to continue at John Jay that I would have to submit to psychiatric counseling.

213. Plaintiff informed the Dr. that the incident was captured on camera and that the plaintiff was transferring out of John Jay and would be a fool to continue there.

214. Plaintiff was escorted out of the building by a Public Safety Officer without incident.

215. John Jay is actively attempting to discredit the victim of the crime for obvious reasons.

## COLLUSION OF THE NYPD, JOHN JAY PUBLIC SAFETY OFFICE AND SENIOR OFFICIALS

216. John Jay College is a higher learning facility that prides itself on teaching future law enforcement the techniques they need to become good Cops and law enforcement personnel.

217. Plaintiff is the victim of several serious crimes that have been perpetrated against him by unknown defendants, yet is being treated as if he is the perpetrator.

218. The co conspirators whom include law enforcement are attempting to discredit and defame the plaintiff by their handling of the situation.

219. The incident of 10/17/17 3:20-3:30 was capture on camera.

220. None of the standard investigative techniques into a chemical or nerve agent attack were followed.

221. There were no swabs of the computers, desk tops, chairs or the plaintiff's hands taken at the time of this attack or at the hospital.

222. Public Safety did not investigate if there were any trespassers present at the time of said incident, and took no statements from anyone.

223. John Jay College whom prides itself on teaching Cops on how to become cops did no investigation into whom perpetrated this heinous crime that has certainly cause the plaintiff permanent injury.

224. The plaintiff has been the victim of an engineered conspiracy against him engineered by several unknown persons whom are experts in the law and in full collusion with the law.

## MEDICAL MALPRACTICE COUNT 2

225. October 19, 2017 @ approximately 1:00 pm after the plaintiff's dog walking route in the vicinity of East 86 St, the plaintiff walked to New York Presbyterian Hospital.

226. Plaintiff explained to the triage nurse that he was sprayed with a neurotoxin while in the library of John Jay October 17, 2017.

227. Plaintiff described his symptoms as numbness in both hands, numbness shooting down his legs to his feet, heart palpitations, difficulty breathing, and numbness in his feet.

228. Plaintiff requested additional blood work and testing to be done.

228. New York Presbyterian declined to draw any additional blood or run any additional tests.

229. Plaintiff was told that the symptoms were from Carpel Tunnel Syndrome.

230. Plaintiff explained that he did not have carpel tunnel syndrome and insisted on additional blood

work and tests being run.

231. New York Presbyterian declined to take additional blood work.

232. Plaintiff's treatment plan prescribed a follow up at the Carpel Tunnel Syndrome Center at New York Presbyterian, see exhibit 10.

233. Plaintiff's discharge order was signed by Makker, Tanveeer Shahabuddin.

234. Plaintiff's symptoms are indicative of neurotoxin poisoning[1].

235. Plaintiff believes that the indifference to his condition is in part to cover up evidence of his condition and as part of a medical racketeering scheme to provide others with medical care.

## ANALYSIS OF MEDICAL RECORDS MOUNT SINAI EXHIBIT 8

236. Plaintiff was not asked for insurance information and placed as a self pay.

237. Plaintiff's account of the events on 10-17-17 differ from Mount Sinai's account of the plaintiff's due to the fact the Mount Sinai ER was in full collusion in this conspiracy to kill, maim, or injure the plaintiff.

238. Mount Sinai's sole purpose in this case is to discredit the plaintiff and prevent the gathering of evidence.

239. The decision to place the plaintiff in psychiatric care was based solely on the goals of the conspirators and John Jay College.

240. No procedures for the decontamination or the gathering of evidence was made during the plaintiff's visit.

241. Plaintiff was not rude, loud, or upset upon his entrance to the ER.

242. Plaintiff has a recording of the plaintiff's ordeal from his arrival in the Public Safety Office until him being forced to place his belongings in a brown bag in the Psychiatric Triage, see exhibit 11 recording of incident.

243. Plaintiff never received a complete psychological evaluation and the diagnosis given to him as delusional disorder is not congruent with my behavior, mood, the absence of psychosis or the fact that this is not a diagnosis you can make without psychiatric history[2].

244. Plaintiff's urine was tested and found free of all illegal drugs, see exhibit 8 4 of 6, 5 of 6, 6 of 6. Common sense states that if the plaintiff was dangerous or delusional he would not have been released.

245. Plaintiff never mentioned anything about the CIA or any other government agencies as stated in exhibit 8 narrative history signature page (circled).

246. Plaintiff also believes that Mount Sinai is circumventing the Privacy Laws by not allowing him to sign the Signature page.

247. As the plaintiff is gathering his evidence another unknown party is gathering his information illegally to perpetuate this illegal orchestration.

248. Plaintiff's purpose for being in the emergency room was for medical treatment after being sprayed with a chemical agent not a psychiatric evaluation as the triage paperwork states.

249. The medical record requires an expert witness.

## TITLE VI CIVIL RIGHTS ACT OF 1964 & PREVENTION OF PARTICIPATION IN FEDERALLY PROTECTED ACTIVITIES

250. Plaintiff was deliberately prevented from participation in his Political Science class on 10-18-17, and has since been forced to withdraw from John Jay as a result of his mistreatment by senior staff and officials.

251. Plaintiff has been prevented from pursuing educational opportunities within John Jay and outside

---

1   Neurotox.com/project/recognizing-neurotoxicity/

2   Https://en.m/wikipedia.org/wiki/Delusional_disorder

of John Jay due to his illegal electronic monitoring and censorship.

252. It is impossible for the plaintiff to know or discern whom is illegally monitoring him without electronic logs.

253. Plaintiff's reputation has been destroyed at the school and he has been made to look as if is mentally ill and part of the perpetration of this crime.

254. Plaintiff has lost a whole semester in college due to an ongoing conspiracy that has been engineered by several alumni and others affiliated with John Jay College.

255. Plaintiff has been prevented from pursuing educational opportunities within John Jay on several occasions as part of this ongoing conspiracy.

256. Plaintiff is being discriminated against due to his ethnicity, criminal record, and the fact that he is being illegally used as a training tool in an engineered conspiracy for the illegal use of several groups and enforced by law enforcement.

257. The same customs & policies are being applied to my daughter Alexandra in college.

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue declaratory judgment stating that:
    1. The plaintiff is guilty of no wrongdoing in this incident.
    2. Have John Jay College issue an official apology to the plaintiff.
    3. Have Mount Sinai Hospital issue an official apology to the plaintiff.

B. Issue an Injunction against the defendants their successors, etc:
    1. Immediately cease and desist all illegal monitoring.
    2. Immediately cease and desist all described behavior in the Injunction request.

C. Immediately issue the reimbursement of tuition in the amount of $1500 dollars.

D. Award compensatory damage in the following amounts:
    1. $500,000 jointly and severally against the defendants who are employed by John Jay.
    2. $500,000 jointly and severally against the defendants who are employed by Mount Sinai Hospital.
    3. $500,000 against Makker Tanveer Shahabuddin Mollah of New York Presbyterian.
    4. $500,000 against the unknown surveillance.

E. Order the full investigation of this incident by the following defendants:
    1. Peter Venice Commanding Officer 18th Pct. NYPD.
    2. FBI Director Christopher Wray.

F. Grant such other relief as it may appear that plaintiff is entitled.

10/30/2017
Respectfully Submitted,

Eric Andrew Perez
PO BOX 40965
Staten Island, NY 10304

## EXHIBITS

Exhibit 1 – email 6-23-17 – Rachel Brown, email – 6-20-17 Dean of Students, email – 8-18-17 Paul Wyatt, email – 9-11-17 Dean of Students, email – 9-14-17 Paul Wyatt, email – 9-20-17 Paul Wyatt, email - 9-23-17 Rachel Brown, email – 10-10-17 Paul Wyatt.

Exhibit 2 – email – 8-16-17 Carol Mason, email 8-17-17 Dean of Students.

Exhibit 3 – email – 9-9-17 John Jay Help Desk

Exhibit 4 – email – 9-26-17 Dr. Bryant

Exhibit 5 – email – 9-19-17 Chancellor's Office, email - 9-21-17 Chancellor's Office

Exhibit 6 – 10-17-17 Incident Report John Jay and NYPD 18th PCT NYPD

Exhibit 7 – Unknown Assailant from 10-17-17

Exhibit 8 – Discharge Paperwork Mount Sinai 10-17-17 and total medical record Mount Sinai.

Exhibit 9 –  10-23-17 Request Form for removal of registration fees & penalties.10-24-17 Medical withdrawal paperwork from Paul Wyatt and course resignation paperwork.

Exhibit 10 – 10-19-17 Discharge paperwork from New York Presbyterian Hospital.

Exhibit 11 – Tape Recording of 10-19-17 incident and recording of call to FBI 10-18-17 reporting incident..

# EXHIBITS

1

## Rescheduling Tuesday appt: Eric Perez Empl ID 12184574

Rachel Brown

**Sent:** Friday, June 23, 2017 12:47 PM
**To:** Eric Perez [ericperezdeservesjustice@gmail.com]; Eric Perez
**Cc:** Paul Wyatt

Hello, Eric Perez.

This is Rachel Brown in the Office of the Dean of Students at John Jay College. We spoke earlier about seeing up an appointment for you to see the Director of Student Relations, Paul Wyatt. Unfortunately, he will be off-campus on Tuesday 6/27 and won't be able to make the appointment with you on that day.

Before we reschedule, Director Wyatt requests that you email him directly (he is cc'd on this email) explaining in detail your issue and what assistance you would like from our office. His email is pawyatt@jjay.cuny.edu. He will let me know when he has received your email, at which point we can schedule the meeting.

Sincerely,
--
Rachel Brown
Assistant to the Dean, Division of Student Affairs



524 West 59th Street, Suite L.65
New York City, NY 10019
Main:  212.621.4143
Fax:    212.237.8282

**From:** Eric Perez [mailto:ericperezdeservesjustice@gmail.com]
**Sent:** Tuesday, June 20, 2017 10:43 AM
**To:** Dean of Students
**Subject:** Eric Perez Empl ID 12184574

Dear Dean of Students,

   Regretfully I am contacting your office in reference to a highly illegal, prejudicial, and egregious situation that involves the illegal use of my identity in your school, stalking, illegal training, behavioral modification, unwarranted invasion of privacy, and other situations that possibly have involved persons, students, and staff of John Jay. This has been the case for at least the past two years that I have lived in NYC. Inding civil rights litigation based upon these accusations and others to include torture against several clandestine entities illegally operating within my area and possibly in your school who are now using my identity illegally within every database that I have existed in order to go through my past life, interfere with my future, intimidate, harass, annoy, and inconvenience me for their own benefit as part of this illegal system that is unfortunately being unleashed upon me. As part of this I have no civil rights, human rights, or common law rights, and I am being treated as if I don't exist as part of some coercive population technique that has me at the center of this. I have registered for classes successfully, but I am having issues with my email and have just changed my password at the school yesterday. I am unable to access my john jay email and your john jay system has my address as 45-31 162 st Flushing, but my CUNY Portal has my address as PO BOX 40965 Staten Island, NY 10304. There is something clearly amiss. I wish I was making this up but something is going on with my information. I believe that there are people operating within your school illegally, stealing information, and causing myself issues as

well. I would like to avoid any further issues with my information. I would appreciate your time and candor in this matter.

Sincerely,

Eric Perez
347-831-8299

10/12/2017                                                              Meeting

## Meeting

Eric Perez
**Sent:** Friday, August 18, 2017 12:51 AM
**To:**   Paul Wyatt

Paul,

   I would like to schedule a meeting in reference to a few issues that I m having: 1 financial aid; my registration and the hostility that I am experiencing with the Financial aid personnel specifically Jane Galehouse 2 the message that I am trying to get to Dean Mason in reference to my real life or death struggle engineered by a few corrupt officials and others within the DOJ and the assistance with a response from the DOJ in reference to my civil rights complaints, criminal complaints, and the inspector general of DOJ. I am unable to obtain a direct response due to the collusion of these corrupt officials and others. I look forward to meeting with you, and hope you can assist me in achieving greatness.

Sincerely,

     Eric Perez

## RE: Delay of emails, career notifications, and censorship

Rachel Brown

**Sent:** Monday, September 11, 2017 9:16 AM
**To:**  Eric Perez
**Cc:**  Dean of Students


Hello, Eric Perez.

This is Rachel Brown in the Office of the Dean of Students at John Jay College. The
Director of Student Relations, Paul Wyatt, would be happy to meet with you to
discuss your concerns. You can contact him directly at 212-237-8871 to schedule an
appointment, or you can email him at pawyatt@jjay.cuny.edu. Please let me know if I
can be of further assistance.

Sincerely,
--
Rachel Brown
Assistant to the Dean, Division of Student Affairs

524 West 59th Street, Suite L.65
New York City, NY 10019
Main:  212.621-4143
Fax:     212.237.8282

-----Original Message-----
From: Eric Perez
Sent: Saturday, September 09, 2017 3:17 PM
To: Dean of Students
Subject: Delay of emails, career notifications, and censorship

Dear Sir or Madam,

     I have contacted your office on several occasions in reference to several
ongoing matters that involve John Jay students, staff, and possible law enforcement
trainees and spies whom might be attending your school. I have notified that my
emails I send from my John Jay email account are being censored. I have also noticed
that the career notifications, my applications to certain positions are being
delayed and possibly censored. I would like to discuss this issue and explain how it
is a part of an ongoing conspiracy against myself and how it is connected with my
daily struggles. I come to John Jay to learn, study, and to lift myself out of
poverty not to be used in the same conspiracy and series of sting operations I am
suing law enforcement in Federal Court about. I look forward to meeting and I hope
you understand.

Sincerely,

                Eric Perez

## RE: Meeting

**Paul Wyatt**
**Sent:** Thursday, September 14, 2017 10:53 AM
**To:**   Eric Perez

Mr. Perez,

When are you generally available to meet?

Paul A. Wyatt, M.P.A.
Director of Student Relations
Office of the Dean of Students
John Jay College of Criminal Justice, C.U.N.Y.
524 West 59th Street, Rm L.65.05
New York City, NY 10019
Tel: 212.237.8871
Fax: 212.237.8282

-----Original Message-----
From: Eric Perez
Sent: Thursday, September 14, 2017 8:15 AM
To: Paul Wyatt <pawyatt@jjay.cuny.edu>
Subject: Meeting

Paul,

       I made a notification to your office in reference to delays and censorship of
my john jay email account, and someone illegally monitoring me electronically while
logged in to john jay computers. This is being done in viation of laws and is also
causing the theft and misuse of my intellectual property not to mention other
information. I have been experiencing this sincemy enrollment and acceptance. I was
informed by Rachel to contact you directly. I would like to schedule an in person
meeting to discuss.

Sincerely,

          Eric Perez

## RE: Response
**Paul Wyatt**
**Sent:** Wednesday, September 20, 2017 1:35 PM
**To:**   Eric Perez

Mr. Perez,

Today does not work for me any longer.  I have to go off-campus this afternoon.  What does your schedule look like tomorrow or early next week?

Paul A. Wyatt, M.P.A.
Director of Student Relations
Office of the Dean of Students
John Jay College of Criminal Justice, C.U.N.Y.
524 West 59th Street, Rm L.65.05
New York City, NY 10019
Tel: 212.237.8871
Fax: 212.237.8282

**From:** Eric Perez
**Sent:** Wednesday, September 20, 2017 1:11 PM
**To:** Paul Wyatt <pawyatt@jjay.cuny.edu>
**Subject:** RE: Response

Paul,

   I am here right now in the library. I am available to talk.

Eric Perez

**From:** Paul Wyatt
**Sent:** Wednesday, September 20, 2017 12:45 PM
**To:** Eric Perez; Dean of Students
**Subject:** RE: Response

Mr. Perez,

When are you available?

Paul A. Wyatt, M.P.A.
Director of Student Relations
Office of the Dean of Students
John Jay College of Criminal Justice, C.U.N.Y.
524 West 59th Street, Rm L.65.05
New York City, NY 10019
Tel: 212.237.8871
Fax: 212.237.8282

**From:** Eric Perez
**Sent:** Wednesday, September 20, 2017 12:45 PM
**To:** Dean of Students <deanofstudents@jjay.cuny.edu>
**Subject:** Response

I have not received any response from Mr. Wyatt? I have sent him emails.

Eric Perez

## Appointment with Mr Wyatt

Eric Perez
**Sent:** Saturday, September 23, 2017 11:37 AM
**To:**   rachel.brown@jjay.cuny.edu

Rachel,

     I am unable to make the Tuesday appointment. I have an oral argument in Court
on Tuesday. I would like to reschedule to discuss my concerns as soon as possible.
Suggestions?

Eric Perez

## RE: Front of John Jay

**Eric Perez**

**Sent:** Tuesday, October 10, 2017 10:05 AM
**To:**   Eric Perez

Mr. Wyatt,

    I wanted to inform you that I believe that someone is somehow using my transcripts illegally. I believe that a
spy ware program was placed on my thumb drive at the NY Public Library about 2 weeks ago, and it basically
duplicates certain files. I don't know exactly who could be doing something like this, but anything having to do
with school I will notify you. As we have discussed I don't have a clue who would want to be me at this point but
it has to do with some program that they are running with the Commis or something. This has been an ongoing
situation as we duiscussed and they have even duplicated or substituted MRI results as well as other
identification to perpetuate this. I know you only have jurisdiction over John Jay matters so I am informing you of
the transcript. I attempted to take the spy ware off the thumb drive but I have too much on it to lose the
information. Sorry for the inconvenience.

Sincerely,

       Eric Perez

**From:** Eric Perez
**Sent:** Thursday, October 05, 2017 6:34 PM
**To:** Paul Wyatt
**Subject:** RE: Front of John Jay

524 59 st.

**From:** Paul Wyatt
**Sent:** Thursday, October 05, 2017 4:52 PM
**To:** Eric Perez; Dean of Students
**Cc:** Gerard W Bryant
**Subject:** RE: Front of John Jay

Hello Mr. Perez,

The 524 West 59th Street entrance or the 899 10th Avenue entrance?

Thanks.

Paul A. Wyatt, M.P.A.
Director of Student Relations
Office of the Dean of Students
John Jay College of Criminal Justice, C.U.N.Y.
524 West 59th Street, Rm L.65.05
New York City, NY 10019
Tel: 212.237.8871
Fax: 212.237.8282

**From:** Eric Perez
**Sent:** Thursday, October 05, 2017 4:04 PM
**To:** Dean of Students <deanofstudents@jjay.cuny.edu>

**Subject:** Front of John Jay

Just a heads up the steps on the side of John Jay entrance are disgusting and need pressure washing, and maybe a no smoking sign. I will volunteer for free to pressure wash is maintenance is unable to.

Sincerely,

      Eric Perez

2

Eggregious Violations and Assistance with the DOJ

# Eggregious Violations and Assistance with the DOJ

Eric Perez

**Sent:** Wednesday, August 16, 2017 11:53 PM
**To:**  carol.mason@jjay.cuny.edu

Ms. Mason,

      Congratulations on reaching such a high position at the DOJ. It must have been a great honor to work besides Mr. Obama and other champions of change. Things have changed for many Americans and persons here from other countries legally and illegally for the better, but the problem is that things have only gotten worse for Eric Perez even though I hold two jobs. I am an honorably discharged Marine, father, business owner, and hopefully student. I have been illegally incarcerated twice, maliciously prosecuted, injured, and hunted inside jail and outside just as many people have. Fortunately, I am living to tell my story, but many people are still in my way and being allowed to do so with the cooperation, collusion, and acting in concert with law enforcement personnel and thousands of informants. My nightmare started long ago with the murder of my mother and the death of my best friend. Someone has engineered Eric's life to be a disaster zone, even though Eric does not affiliate with anyone. To be honest I figured this out a very long time ago and have mastered the tactics, methods of control, and the groups being used to restrain, harass, intimidate, inconvenience, and ultimately cause my death. The most disgusting part about this is the amount of cooperation these oppressors and clandestine elements whom are mostly foreign are receiving from the local populations and the law enforcement community. I have been what they call a world wide systemic for a very long time, and have been used in a very complex personnel orchestration using a variety of media groups, Youtube companies, and Production companies. The real issue at hand is that I am being used as an inanimate object and have no civil, common law, or human rights and am not recognized in any official capacity by the US government due to the fact that this constant mistreatment of Mr. Perez has become the Unofficial Custom and Policy of the United States Government. The same persons under the color of law, religious elements, and foreign services, and even your favorite entertainers have commercialized my life and using concepts such as the third person torter, ripple effect, deliberate indifference, and criminal law enforcement they have targeted myself and my children making us live under intimidation, violence, and fear as part of a scheme that I have been used for for a very long time. They have made an economy out of my mistreatment and engineered violations, Civil rights cases the obstruction and engineering of those cases, the engineering of every situation; person I have come in contact with, and each situation from inside jail & prison to the present point. The same law enforcement that have tried to murder me in prison and used me and my children as entertainment in various ways are now surrounding us each day and placing us in dangerous situations by engineering our environments and targeting us through physical, electronic surveillance. They censor anything I do on the internet and program their CEO friends and company owners against me so that I can not become successful. They use me in an orchestrated struggle between goups and a pawn, and have been doing so for a very long time. The same people who have cost me my life have been paid large sums of money over the years to engineer and move people whom have instructions about me into my area. They have arranged hanging skits, assaults, and other scenarios with the radio stations in Tampa Bay and other shows in NYC. This is the same way that they used to hunt slaves in the South for years and how so many people have lost their lives. I have been placed in a cointelpro area in Staten Island where I am under surveillance from the same forces who have been using my hunt, defamation, harassment, intimidation, censorship to include: mail, internet, social media, and redirection of phone calls to control anything I do so that illegals and others participating in this can use my hard work, intellectual property, personal information, invention idea, patent, business paperwork, and anything else in their own lives to obtain financial gain from clandestine agencies, religious organizations, and even entertainment groups. They have placed me in a house with wires in the wall and have eavesdropping equipment and at times secret cameras in my apartment. I took this apartment after becoming homeless in 2015. I believe Ice and other agencies working together with several groups in the area have engineered my upstairs neighbors who act out upon orders and perform domestic violence skits, have sex at certain times, and are charged with assisting the spies that come in and out of my apartment who take shifts in the basement. These people have access to my WiFi, Con Edison Account, Bank Account, DMV records, military records, and anything else you can think of. They are surveilling me en masse on foot and car and track me through my phones that I have purchased in stores. They have clones of my phones immediately after I purchase. The places I am employed are also set ups as the same law enforcement and spies monitor me their as well and arrange harassment, intimidation, inconvenience, and mistreatment and scenarios that everyone participates and acts in. Nobody will ever explain or tell me what is going on or really going on due to the fact that arrangements have been made between all sides. I have seen actors such as Tom Cruise, Vin Diesel, actors from 13th Hour, my favorite Denzel Washington, Marcus Latrell, Kevin Gates, Immortal Technique, Ebro, Laura Styles, and anyone else you could think of out here in Staten Island within a few blocks of my residence. I even saw Michelle O'Bama and here recordings of voices such as O'Bama. I have seen high profile snitches such as Sammy the Bull and others that I wont mention. These people have made the engineering of my death and oppression their job, and have enforced the indifference and unofficial policy that this is okay. I have made two civilian criminal complaints that have been obstructed, emailed the doj in reference to a biological agent sprayed on me, attempted to make police reports about people in the basement. My landlord is in on this whole thing and works with the

NYPD. I heard him reciting a line in the Federal Building while mailing a letter to the DOJ Ig and other places. These people have let Russians and other subversives from Europ and South America direct access to my email, phone, medical, dna, blood work, bank information, military information, and have done the same to my daughter. They have threatened to rape my daughter as well and play along with the various skits and shows that I am not allowed to listen to on the radio of television. Its called a Coercive Population Control Program. I have received no response from the DOJ in reference to my complaints due to the fact that the indifference to the violations have become a paycheck. These people stay on this block and surrounding blocks and come from thousands of miles to stalk, harass and entertain themselves with me. The NYPD is tracking me everywhere as well and using illegal tactics to intimidate me and make me feel threatened for my life as well as other persons involved. I am sick of this to say the least and need assistance. This has gone on too long. I also need assistance with processing my financial aid as t they state they will not process it and the fact that my internet and computer are illegal tracked and censored from a remote location I am unable to access my CUNY First account. I do exist and this straw man concept is sickening. I would appreciate anything you could do and a meeting if possible. I look forward to attending and truly making the change in society needed.

Sincerely,

    Eric Perez
    3478202541

RE: Message for Ms. Mason

## RE: Message for Ms. Mason
Rachel Brown
**Sent:** Thursday, August 17, 2017 11:54 AM
**To:** Eric Perez
**Cc:** Dean of Students


Hello, Eric Perez.

This is Rachel Brown in the Office of the Dean of Students at John Jay College. The Director of Student Relations, Paul Wyatt, would be happy to meet with you to discuss your concerns. You can contact him directly at 212-237-8871 to schedule an appointment, or you can email him at pawyatt@jjay.cuny.edu. Please let me know if I can be of further assistance.


Sincerely,
--
Rachel Brown
Assistant to the Dean, Division of Student Affairs



524 West 59th Street, Suite L.65
New York City, NY 10019
Main: 212.621-4143
Fax:  212.237.8282


**From:** Eric Perez
**Sent:** Thursday, August 17, 2017 12:14 AM
**To:** Dean of Students
**Subject:** Message for Ms. Mason

Please forward this email to Ms. Mason. This is a serious matter.

Ms. Mason,

Congratulations on reaching such a high position at the DOJ. It must have been a great honor to work besides Mr. Obama and other champions of change. Things have changed for many Americans and persons here from other countries legally and illegally for the better, but the problem is that things have only gotten worse for Eric Perez even though I hold two jobs. I am an honorably discharged Marine, father, business owner, and hopefully student. I have been illegally incarcerated twice, maliciously prosecuted, injured, and hunted inside jail and outside just as many people have. Fortunately, I am living to tell my story, but many people are still in my way and being allowed to do so with the cooperation, collusion, and acting in concert with law enforcement personnel and thousands of informants. My nightmare started long ago with the murder of my mother and the death of my best friend. Someone has engineered Eric's life to be a disaster zone, even though Eric does not affiliate with anyone. To be honest I figured this out a very long time ago and have mastered the tactics, methods of control, and the groups being used to restrain, harass, intimidate, inconvenience, and ultimately cause my death. The most disgusting part about this is the amount of cooperation these oppressors and clandestine elements whom are mostly foreign are receiving from the local populations and the law enforcement community. I have been what they call a world wide systemic for a very long time, and have been used in a very complex personnel orchestration using a variety of media groups, Youtube companies, and Production companies. The real issue at hand is that I am being used as an inanimate object and have no civil, common law, or human rights and am not

10/12/2017

RE: Message for Ms. Mason

recognized in any official capacity by the US government due to the fact that this constant mistreatment of Mr. Perez has become the Unofficial Custom and Policy of the United States Government. The same persons under the color of law, religious elements, and foreign services, and even your favorite entertainers have commercialized my life and using concepts such as the third person torter, ripple effect, deliberate indifference, and criminal law enforcement they have targeted myself and my children making us live under intimidation, violence, and fear as part of a scheme that I have been used for for a very long time. They have made an economy out of my mistreatment and engineered violations, Civil rights cases the obstruction and engineering of those cases, the engineering of every situation; person I have come in contact with, and each situation from inside jail & prison to the present point. The same law enforcement that have tried to murder me in prison and used me and my children as entertainment in various ways are now surrounding us each day and placing us in dangerous situations by engineering our environments and targeting us through physical, electronic surveillance. They censor anything I do on the internet and program their CEO friends and company owners against me so that I can not become successful. They use me in an orchestrated struggle between goups and a pawn, and have been doing so for a very long time. The same people who have cost me my life have been paid large sums of money over the years to engineer and move people whom have instructions about me into my area. They have arranged hanging skits, assaults, and other scenarios with the radio stations in Tampa Bay and other shows in NYC. This is the same way that they used to hunt slaves in the South for years and how so many people have lost their lives. I have been placed in a cointelpro area in Staten Island where I am under surveillance from the same forces who have been using my hunt, defamation, harassment, intimidation, censorship to include: mail, internet, social media, and redirection of phone calls to control anything I do so that illegals and others participating in this can use my hard work, intellectual property, personal information, invention idea, patent, business paperwork, and anything else in their own lives to obtain financial gain from clandestine agencies, religious organizations, and even entertainment groups. They have placed me in a house with wires in the wall and have eavesdropping equipment and at times secret cameras in my apartment, and now they are using their influence and other ways to keep me here and harass on a more frequent basis. I took this apartment after becoming homeless in 2015. I believe Ice and other agencies working together with several groups in the area have engineered my upstairs neighbors who act out upon orders and perform domestic violence skits, have sex at certain times, and are charged with assisting the spies that come in and out of my apartment who take shifts in the basement. These people have access to my WiFi, Con Edison Account, Bank Account, DMV records, military records, and anything else you can think of. They are surveilling me en masse on foot and car and track me through my phones that I have purchased in stores. They have clones of my phones immediately after I purchase. The places I am employed are also set ups as the same law enforcement and spies monitor me their as well and arrange harassment, intimidation, inconvenience, and mistreatment and scenarios that everyone participates and acts in. Nobody will ever explain or tell me what is going on or really going on due to the fact that arrangements have been made between all sides. I have seen actors such as Tom Cruise, Vin Diesel, actors from 13th Hour, my favorite Denzel Washington, Marcus Latrell, Kevin Gates, Immortal Technique, Ebro, Laura Styles, and anyone else you could think of out here in Staten Island within a few blocks of my residence. I even saw Michelle O'Bama and here recordings of voices such as O'Bama. I have seen high profile snitches such as Sammy the Bull and others that I wont mention. These people have made the engineering of my death and oppression their job, and have enforced the indifference and unofficial policy that this is okay. I have made two civilian criminal complaints that have been obstructed, emailed the doj in reference to a biological agent sprayed on me, attempted to make police reports about people in the basement. My landlord is in on this whole thing and works with the NYPD. I heard him reciting a line in the Federal Building while mailing a letter to the DOJ Ig and other places. These people have let Russians and other subversives from Europ and South America direct access to my email, phone, medical, dna, blood work, bank information, military information, and have done the same to my daughter. They have threatened to rape my daughter as well and play along with the various skits and shows that I am not allowed to listen to on the radio of television. Its called a Coercive Population Control Program. I have received no response from the DOJ in reference to my complaints due to the fact that the indifference to the violations have become a paycheck. These people stay on this block and surrounding blocks and come from thousands of miles to stalk, harass and entertain themselves with me. The NYPD is tracking me everywhere as well and using illegal tactics to intimidate me and make me feel threatened for my life as well as other persons involved. I am sick of this to say the least and need assistance. This has gone on too long. I also need assistance with processing my financial aid as t they state they will not process it and the fact that my internet and computer are illegal tracked and censored from a remote location I am unable to access my CUNY First account. I do exist and this straw man concept is sickening. I would appreciate anything you could do and a meeting if possible. I look forward to attending and truly making the change in society needed.

Sincerely,

10/12/2017                                      RE: Message for Ms. Mason

Eric Perez
3478202541

3

# Emails and other John Jay sites

Eric Perez
**Sent:** Saturday, September 09, 2017 3:02 PM
**To:** helddesk@jjay.cuny.edu

To whom it may concern:

I have had several issues logging into my email that has delayed responses to certain persons. I am also receiving mail and notifications on the career site the day after they are posted. I don't know if this is being done deliberately as part of an ongoing adversarial system that I have been the subject of and have multiple lawsuits in Federal Court about or if someone at MIS or the friends of these conspirators involved in this against me are continuing this adversarial system upon orders but I would like to enlist your assistance in helping me. I do not want to add CUNY John Jay to a long list of defendants. I have a long list already and I don't want to have an adversarial relationship with a college that is supposed to be neutral and fair to all who attend. I hope you can assist and I can attend school as everyone else who had been accepted does.

Sincerely,

Eric Perez

4

# RE: Appointment

**Gerard W Bryant**

**Sent:** Tuesday, September 26, 2017 4:51 PM
**To:**   Eric Perez; Paul Wyatt

Thank you.

I have had an opportunity to look at my schedule.  Are you available to meet
tomorrow, Wednesday ,September 27, 2017 at 5:00 PM for about 30 minutes?  I am
located in the Wellness Center L68 (3 doors down from where we met today).

Please confirm and I will place it in my appointment book.

Sincerely,
Dr. Bryant

Gerard W. Bryant, Ph.D.
Director of Counseling Services Center, Wellness Center
Adjunct Assistant Professor, Psychology Department

524 West 59th Street, L68.05 NB
New York, N.Y. 10019
(646) 557-4552 (Phone)
(917) 207-3225 (Mobile)
(212) 484-1319 (Fax)
gwbryant@jjay.cuny.edu

"If you learn, teach.  If you get, give."  Maya Angelou


-----Original Message-----
From: Eric Perez
Sent: Tuesday, September 26, 2017 4:43 PM
To: Paul Wyatt
Cc: Gerard W Bryant
Subject: RE: Appointment

Gentlemen,

        I appreciate the time you have taken out of your busy schedules to speak to
me about my concerns. I hope you understand what I have explained as I understand
your concerns for your students. I am fully committed to achieving my educational
goals at John Jay and plan to excel to the top of my class. I have the utmost
respect for the positions that you have achieved and your ways. I look forward to
finishing up this semester and living up to my fullest potential. Thank you again.

Sincerely,

                Eric Perez

5

## Deprivation of rights and engineered discrimination at John Jay

Eric Perez
**Sent:** Tuesday, September 19, 2017 7:08 PM
**To:** chancellor@cuny.edu

Dear Sir or Madam:

I am a returning adult transfer student (sophomore) and Marines Corps veteran attending John Jay. I have contacted the Dean of Students Office here at John Jay on several Occasions due to an ongoing situation concerning several ongoing companies and groups that have systematically targeted me. A pattern of this treatment which includes several clandestine groups whom are ultimately under the color of law and third parties whim are operating under the premise that I am their target. I don't know the email privacy clause or the policies on electronic or physical surveillance within CUNY but I do know that generally no entity is allowed to illegally monitor anyone without a warrant or an official mandate. The most recent interview and tactic of this company as I have known to call it is that I was targeted for an assault after leaving the building. Now these people pulled up acted like they were going to do something and then got back in their truck, but you get the gist that these individuals are practicing using my harassment, ,intimidation, and illegal surveillance. This also includes the monitoring of the John Jay email, engineering personnel switches, and other tactics and then deny. I did not enroll in this college to be used in any way, shape or form. I have reached out to the Dean of Students and have received no response. This has been an ongoing situation engineered by a combination of law enforcement and other groups who have continuously used me as part of the "Prism " Program, a neutral party whom is involved with nobody or nothing but made to look as I am involved with everything, defamed, and indirectly harassed using several law enforcement doctrines: the third person tort, commercialization, and stalking. This is an ongoing orchestration and involves my data breach, inconvenience, unequal protection of the law, and mistreatment by the same personnel over a number of years. I understand your jurisdiction is College and not the street, but I should not feel any way but motivated, studious, and safe in my school. These personnel are granted illegal access to campus and obviously my information. The main idea is to create faceless enemies and believe that certain acts are not centered on this student's assault, unequal protection or embarrassment. I do understand that this is a law enforcement college but if law enforcement and colleges are allowed to act adversarial towards US citizens and persons attempting to obtain a degree then what is next. I would like to file a formal complaint with your office in reference to this situation. I have studied this program, the tactics, and behavior of the active participants whom have created a world of fiction and various verses and lives for years. As stated please provide information on how to file a complaint. I hope to pursue my degree and continue to be a positive member of society despite the mass ignorance and population coercion and segmentation I have experienced engineered by some of the most ignorant intelligent people acting in collusion.

Sincerely,


Eric Perez

## Follow Up Email

Eric Perez
**Sent:** Thursday, September 21, 2017 3:19 PM
**To:**   chancellor@cuny.edu

Dear Sir or mam:

   I have not received a response to my communication in reference to an engineered conspiracy possibly originating and being directed from one of your CUNY schools where I believe I have been targeted by various groups engaged in seditious and malicious activities against not only myself, but using me as an object of abuse and spying for the engineers of this plot, essentially using me as practice and an example. These groups involve religions that are involved with white supremacy and the occult as well as communists and others to include law enforcement engaging in a practice of discrimination and hate as practice. It is evident that John Jay is not a fierce advocate of justice or anything else. I would like to speak to someone in reference to this situation. There are spies in this school and employees who are illegally using my illegally gathered information to engineer scenarios and influence events on the outside of this school and these are indisputable facts. Your offices lack of response also implies your collusion and complacency with this situation and makes this look as if it is a common practice and illegal policy across CUNY itself. If you  are treated as is you are in a prison cell and are made to accept the same liberty and deprivation issues in regular life as you are subjected to inside prison than this is a huge issue, and I will take legal action. I look forward to your response.

Sincerely,

       Eric Perez