UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC ANDREW PEREZ,

                Plaintiff,

              -against-

KAROL V. MASON, PAUL WYATT, DR. BRYANT, CONSTANTINOS KATERGARIS, UNKNOWN PUBLIC SAFETY OFFICERS, JOSPEH LAUB, PETER VENICE, UNKNOWN EMERGENCY ROOM SUPERVISOR MOUNT SINAI HOSPITAL, ALEX CHENG, AARON SAVENDOFF, TERESA DAY, MARIE BHUIYAN, LEA VAZQUEZ, PEDRO ECHEVARRIA, MAKKER TANVEER SHAHABUDDIN MOLLAH, CHRISTOPHER WRAY, UNKNOWN ASSAILANTS,

                Defendants.

17-CV-8343 (CM)

ORDER OF DISMISSAL

---

COLLEEN McMAHON, Chief United States District Judge:

      Plaintiff Eric Andrew Perez, a Staten Island resident appearing *pro se*, brings this action under Title VI of the Civil Rights Act of 1964 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), alleging that persons at John Jay College sprayed neurotoxins on him and that medical officials at two private hospitals have conspired with John Jay College to cover up the use of neurotoxins on Plaintiff. By order dated October 31, 2017, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. The Court dismisses the complaint for the reasons set forth below.

## STANDARD OF REVIEW

      The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). While the law mandates dismissal on any of these grounds, the

Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

## BACKGROUND

In the introductory paragraph of the complaint, Plaintiff explains that he brings this "civil criminal" action under Title VI of the Civil Rights Act of 1964, the Fourth Amendment, and AEDPA, and that he is "suffering from an unwarranted invasion of privacy from within John Jay College." (Compl. at 1.) He alleges that "he was sprayed with a neurotoxin in the John Jay College Library by an unknown assailant as part of this conspiracy to wound and injure him permanently as part of an ongoing nefarious conspiracy against him." (*Id.*)

In May 2017, Plaintiff applied to several colleges associated with the City University of New York ("CUNY"), including John Jay College, which is allegedly "known as a cop college" where over half of the students "are in cadet programs or pursuing careers in clandestine services." (*Id.* at ¶¶ 21-24, 30.) Plaintiff alleges that John Jay College "has a strong neo[-]liberal, seditious, sanctuary city, and communist center." (*Id.* at ¶ 31.) As part of his application to John

2

Jay College, Plaintiff submitted official transcripts and immunization records, which "are being illegally used by various persons whom [sic] have engineered this conspiracy against [Plaintiff] and as documents for illegals [sic]." (*Id*. at ¶¶ 27, 29.) John Jay College accepted Plaintiff for admission, the State University of New York at Old Westbury rejected him, and the rest of the CUNY schools did not respond to Plaintiff's applications, all of which Plaintiff concludes is "part of engineering this conspiracy." (*Id*. at ¶¶ 22-25, 44.) Plaintiff states that during his visits to John Jay College, he "noticed that he was being stalked and followed from his apartment to John Jay" and that "several students and faculty members were using the first names of his daughters . . . in staged conversations." (*Id*. at ¶¶ 41-42.) He adds that "there were several production companies operating out of John Jay College at the time." (*Id*. at ¶ 43.) The Court understands this allegation as suggesting that actors, working at the behest of unnamed production companies, pretended to be students and faculty members during Plaintiff's visits to the college.

Upon Plaintiff's admission to John Jay College, he noticed several irregularities related to his CUNY email account. (*Id*. at ¶¶ 45-49.) Plaintiff alleges that "his internet, [L]exis [N]exis, library database searches, scholarship database file, and the writing of his college papers were being illegally monitored and interfered with while using" the computer facilities at the college. (*Id*. at ¶ 53.) He "believes that the conspirators of this conspiracy were directed to allow persons access to his personal information and directed John Jay IT employees to inconvenience" Plaintiff. (*Id*. at ¶ 54.) And he alleges that John Jay College has "a custom [and] policy to make a game out of harassing, intimidating, inconveniencing, and even driving its students insane." (*Id*. at 62.)

Plaintiff alleges that on October 10 and October 17, 2017, while Plaintiff was using the college's library, unknown persons sprayed some kind of mist on Plaintiff, causing Plaintiff

3

difficulty breathing and numbness to the hand on which the mist landed. (*Id*. at ¶¶ 72-110.) After the incident on October 17, 2017, Plaintiff went to the campus's Public Safety Office, completed an incident report, and requested that an ambulance take him to a hospital. (*Id*. at ¶¶ 111-18.) En route to Mt. Sinai Hospital, "[t]he ambulance was followed by a gray vehicle recording the ambulance with a camera phone and several other vehicles." (*Id*. at ¶ 127.) Plaintiff later learned, however, that Mt. Sinai Hospital and John Jay College "work together on a regular basis and also share employees," a "fact [that] became painfully apparent after [Plaintiff's] arrival." (*Id*. at ¶¶ 129-130.)

Upon arrival at the hospital, "a scene was set up in the Emergency Room (this is how clandestine operatives and law enforcement have been known to train)." (*Id*. at ¶ 133.) For instance, while Plaintiff was in a triage unit, "[t]here was a tape of a woman screaming at the top of her lungs playing in a room to the left of where [P]laintiff was told to sit." (*Id*. at ¶ 135). But when Plaintiff "got up to see who was screaming like that," he "saw that the room was empty." (*Id*. at ¶ 136.) A nurse later arrived, took Plaintiff's vital signs, and asked standard intake questions about his medical condition. (*Id*. at ¶¶ 136-141.) The nurse informed Plaintiff that he was to be held for a psychiatric evaluation. (*Id*. at ¶ 144.) Plaintiff adds that a "person who identified himself as Dr. Aaron Savedoff stated that [Plaintiff] had to be psychiatric ally [sic] evaluated[,]" but the photo on Savedoff's identity card did not match his face. (*Id*. at ¶¶ 145-46.) In any event, hospital security guards arrived, and Plaintiff complied with their request to place his belongings into a brown bag" and go into an observation room. (*Id*. at ¶¶ 147-160.) Plaintiff describes what happened next:

> The whole time that [Plaintiff] was in the psychiatric triage[,] the man playing Dr. Savedoff and the social worker were having scripted conversations with persons on the telephone and playing like the psychiatric triage area were [sic] some sort of head quarters [sic] for something. After an hour or so[,] the man playing Aaron Savedoff and a social worker who turned her badge around so that [Plaintiff]

4

could not see the picture entered the room and stated that [they were] going to let [him] go but that [they] believe[d] that [Plaintiff's] accounts of the incident depart from the rest of the people that [sic] were there so [Plaintiff is] going to be banned from the John Jay campus until [Plaintiff] can meet with Dr. Ben Elswick.

(*Id*. at ¶¶ 163-64.)

After being discharged from the hospital, Plaintiff filed a report about the library incident with an officer of the 18th Precinct of the New York City Police Department ("NYPD"). (*Id*. at ¶¶ 174-79.) He also filed a report with the Federal Bureau of Investigation ("FBI"). (*Id*. at ¶¶ 182-83.) Plaintiff's symptoms persisted. He concluded that he was "exposed to neurotoxins" and that "NYPD [and] John Jay Public Safety engineered the incident of [October 17, 2017]." (*Id*. at ¶¶ 180-81, 184.)

On October 18, 2017, Plaintiff attended his English course, and the students "watched the rest of a movie produced by the George Soros [sic]," at which time Plaintiff "realized who has been responsible for the conspiracy that he has been suffering from." (*Id*. at ¶ 192.) CUNY officials later confiscated Plaintiff's student identification card. (*Id*. at ¶ 196.) They also told Plaintiff that he could not continue at John Jay College unless he submitted to a psychiatric evaluation; Plaintiff informed the officials of his intent to withdraw from the school. (*Id*. at ¶¶ 202-214.)

Plaintiff alleges that CUNY failed to adequately investigate the incidents in the library:

> The incident of 10/17/17 3:20-3:30 was capture [sic] on camera. None of the standard investigative techniques into a chemical or nerve agent attack were followed. There were no swabs of the computers, desk tops, chairs or [Plaintiff's] hands taken at the time of this attack or at the hospital. Public safety did not investigate if there were any trespassers present at the time of said incident, and took no statements from anyone. John Jay College whom [sic] prides itself on teaching Cops on how to become cops did no investigations into whom perpetrated this heinous crime that has certainly caused [Plaintiff] permanent injury. The plaintiff has been the victim of an engineered conspiracy against him engineered by several unknown persons whom [sic] are experts in the law and in full collusion with the law.

(*Id*. at ¶¶ 220-24.)

On October 19, 2017, Plaintiff sought medical treatment at New York Presbyterian Hospital, told a nurse that he was exposed to a neurotoxin, and explained his symptoms. Hospital staff refused to run any of the diagnostic tests that Plaintiff requested and informed him that he was displaying signs of carpal tunnel syndrome, a diagnosis that Plaintiff disputes. (*Id*. at ¶¶ 225-234.) Plaintiff concludes that "the indifference to his condition is in part to cover up evidence of his condition and as part of a medical racketeering scheme to provide others with medical care." (*Id*. at ¶ 235.)

Plaintiff sues Karol V. Mason, the President of John Jay College; Paul Wyatt, the Dean of Students at John Jay College; Dr. Bryant, the Director of Student Relations at John Jay College; Constantinos Katergaris, a Public Safety Sergeant at John Jay College; Unknown Public Safety Officers at John Jay College; Joseph Laub, Chief Information Officer at John Jay College; Peter Venice, Commanding Officer of the NYPD's 18th Precinct; Unknown Emergency Room Supervisor at Mt. Sinai Hospital; Alex Cheng, a physician at Mt. Sinai Hospital; Marie Bhuyian, a nurse at Mt. Sinai Hospital; Leea Vazquez, a paramedic; Pedro Echevarria, a paramedic; Makker Tanveer Shahabuddin Mollah, a physician at New York Presbyterian Hospital; Christopher Wray, the FBI Director; and Unknown Assailants. He seeks declaratory and injunctive relief, along with monetary damages. Plaintiff also submits with his complaint an unsigned order to show cause seeking a preliminary injunction (ECF No. 3), with supporting documents (ECF Nos. 4, 6), and an application for the Court to request *pro bono* counsel (ECF No. 5).

## DISCUSSION

Even when read with the "special solicitude" due *pro se* pleadings, *Triestman*, 470 F.3d at 474-75, Plaintiff's complaint must be dismissed as frivolous. Plaintiff's allegations rise to the

level of the irrational, and there is no legal theory on which he can rely. *See Denton*, 504 U.S. at 33; *Livingston*, 141 F.3d at 437.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket.

Plaintiff's complaint is dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B)(iii).

The Court denies as moot Plaintiff's motion for a preliminary injunction and restraining order (ECF Nos. 3-4, 6) and his application for the Court to request *pro bono* counsel (ECF No. 5).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  November 28, 2017
    New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge